UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

   - v. -

COLIN STEVEN,

           Defendant.

- - - - - - - - - - - - - - - - x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 2 1 2017
```

**INFORMATION**

17 Cr. ___

**17 CRIM 788**

The United States Attorney charges:

## COUNT ONE
(Conspiracy to Violate the Foreign Corrupt Practices Act)

### Overview

1.  From in or about November 2009, up to and including in or about April 2011, COLIN STEVEN, the defendant, engaged in an international conspiracy to bribe an official of the Kingdom of Saudi Arabia (the "Saudi Arabia Official") in connection with the $93 million sale of jets from STEVEN's employer, Embraer S.A. ("Embraer"), to a company located in Saudi Arabia (the "Saudi Arabia Company"). As part of the scheme, STEVEN caused approximately $1.5 million in bribe payments to be made by Embraer to the Saudi Arabia Official through an intermediary company located in South Africa (the "South Africa Company"). In exchange for those payments, the Saudi Arabia Official provided more favorable terms to Embraer in a sale of jets to the Saudi Arabia Company. As a further part of the scheme,

1

**JUDGE NATHAN**

STEVEN arranged to and did receive a kickback from a portion of the bribe proceeds.

### Relevant Persons and Entities

2. At all times relevant to this Information, Embraer was an aircraft manufacturer based in Brazil, with operations and subsidiaries in various locations around the world, including the United States and the Middle East. Embraer manufactured commercial, executive, and defense aircraft for governmental and private customers throughout the world. Embraer's American depositary shares were listed and traded on the New York Stock Exchange, and Embraer was required to file periodic reports with the Securities and Exchange Commission under Section 15(d) of the Securities Exchange Act, Title 15, United States Code, Section 78o(d). Accordingly, Embraer was an issuer within the meaning of the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-1 and 78m. Embraer Representations LLC ("Embraer RL") was a subsidiary wholly owned by Embraer and incorporated in Delaware. Embraer RL maintained a bank account in Manhattan, New York.

3. At all times relevant to this Information, COLIN STEVEN, the defendant, was a British national. Until December 2013, STEVEN was an executive in Embraer's Executive Jets Division and had responsibility for overseeing the generation of sales in regions that included the Middle East. Accordingly,

2

STEVEN was an "employee" and "agent" of an issuer within the meaning of the FCPA, Title 15, United States Code, Section 78dd-1.

4.    The Saudi Arabia Company was the state-owned and state-controlled national oil company of Saudi Arabia, and performed a function that Saudi Arabia treated as its own. Accordingly, the Saudi Arabia Company was an "instrumentality" of a foreign government within the meaning of the FCPA, Title 15, United States Code, Section 78dd-1(f)(1). The Saudi Arabia Official was a high-level official at the Saudi Arabia Company who had influence over aircraft purchasing decisions.

5.    The South Africa Company was an industrial valve and pump manufacturer partially owned by friends of COLIN STEVEN, the defendant. As of the time of the events described in this Information, the South Africa Company had no experience in the aircraft industry or in Saudi Arabia.

## The FCPA Bribery Scheme

6.    From in or about November 2009 through in or about April 2011, COLIN STEVEN, with others, agreed to pay, and caused and aided and abetted Embraer's actual payment of, approximately $1.5 million in bribes to the Saudi Arabia Official in order to obtain a contract between the Saudi Arabia Company and Embraer for the sale of three business jets, valued at approximately $93 million.

3

7. In his capacity as an executive with Embraer's Executive Jets Division, COLIN STEVEN, the defendant, oversaw staff who were responsible for selling new and used Embraer aircraft. Both Embraer's revenue and employees' sales commissions, including for STEVEN and the sales agents he supervised, were significantly higher for sales of new aircraft compared to used aircraft.

8. In or about 2006, COLIN STEVEN, the defendant, and others at Embraer learned that the Saudi Arabia Company was interested in purchasing aircraft. Thereafter, and until in or about the fall of 2009, STEVEN and a salesperson who reported to him had occasional contact with employees of the Saudi Arabia Company, and periodically discussed the potential sale of Embraer aircraft. During that period, STEVEN learned that the Saudi Arabia Company was interested in purchasing used aircraft.

9. In or about late 2009, COLIN STEVEN, the defendant, met with the Saudi Arabia Official in London, England. The Saudi Arabia Official offered to help Embraer win the aircraft contract from the Saudi Arabia Company, and to change the deal from used jets to new jets if Embraer paid the Saudi Arabia Official. STEVEN knew that the Saudi Arabia Official was a high-level official at the Saudi Arabia Company and believed that the Saudi Arabia Official could deliver on the promise.

4

10.  Over the course of multiple discussions in London,
England, and with the approval of his supervisor ("Embraer
Executive A"), COLIN STEVEN, the defendant, and the Saudi Arabia
Official agreed on a per-aircraft payment of $550,000 to be paid
to the Saudi Arabia Official, for a total bribe amount of $1.65
million.

11.  On or about December 10, 2009, COLIN STEVEN, the
defendant, sent an email to Embraer Executive A and another
Embraer executive ("Embraer Executive B"), in which STEVEN
wrote, in part, that the Saudi Arabia Official "has budget[ed]
for used [aircraft] only and will have to lobby for more funds
to take new [aircraft] over used."  Defendant STEVEN added,
"[t]here is more to come to replace the entire fleet they have
with [Embraer model] 170,s [sic] [Saudi Arabia Official] sees.
this as long term."  Embraer Executive A approved offering a
per-aircraft payment of $550,000 to the Saudi Arabia Official.

12.  In or about late 2009 and early 2010, COLIN STEVEN,
the defendant, developed a plan to use the South Africa Company
as a purported agent on the transaction with the Saudi Arabia
Company.  As a result, Embraer would pay $1.65 million in
"finders fees" to the South Africa Company.  In truth and in
fact, the South Africa Company would perform no work on the
transaction and would be used to facilitate and to disguise the
payment to the Saudi Arabia Official.

5

13. Between in or about late 2009 and in or about early 2010, COLIN STEVEN, the defendant, had a telephone conversation with an executive at Embraer ("Embraer Executive C"), in which STEVEN described the planned bribery scheme and the plan to use the South Africa Company as the entity that would pass the payments to the Saudi Arabia Official. Embraer Executive C reassured STEVEN that South Africa Company could be trusted to pass on the money to the Saudi Arabia Official.

14. In or about early 2010, acting on the Saudi Arabia Official's recommendation, a committee at the Saudi Arabia Company approved the Saudi Arabia Company's purchase of three new aircraft from Embraer for $93 million.

15. On or about March 5, 2010, Embraer RL executed an agreement with the South Africa Company, pursuant to which the South Africa Company would purportedly "promote sales of . . .. aircraft manufactured by Embraer . . . solely and specifically to" a subsidiary of the Saudi Arabia Company. In reality, the South Africa Company provided no services to Embraer other than serving as a conduit to funnel payments to the Saudi Arabia Official. The agreement did not disclose that the payments were ultimately bound for the Saudi Arabia Official.

16. Less than two weeks later, on or about March 15, 2010, Embraer and a U.S.-based subsidiary of the Saudi Arabia Company entered into an aircraft purchase agreement, pursuant to which

6

the subsidiary agreed to purchase three new aircraft for approximately $93 million. The aircraft were delivered in or around November and December 2010.

17. In or about December 2010, the South Africa Company submitted three invoices to Embraer, each in the amount of $550,000, for its purported commission, even though it had not rendered any services to Embraer in connection with the sale. Executives at Embraer approved paying the invoices. The payments were made through two wire transfers from Embraer RL's bank account in Manhattan, New York, to the South Africa Company's bank account in South Africa: $550,000 on or about December 22, 2010, and $1.1 million on or about February 18, 2011.

18. Between on or about February 2, 2011, and on or about April 5, 2011, the South Africa Company made three wire transfers totaling $1,434,100 to bank accounts in Switzerland and Bahrain held by an individual who was acting as an intermediary for the Saudi Arabia Official ("Intermediary A"). Intermediary A kept a portion of the funds and transferred the remainder to the Saudi Arabia Official.

## The Kickback Scheme

19. As set forth below, COLIN STEVEN, the defendant, caused a portion of the fraudulent payment that Embraer RL made to the South Africa Company to be paid to STEVEN as a kickback. In total, STEVEN received approximately $129,935 in kickbacks.

20. In or about late 2009 and early 2010, while COLIN STEVEN, the defendant, with others, was arranging to pay the Saudi Arabia Official, STEVEN also developed a plan to take a portion of the money as a kickback. STEVEN discussed this plan with Embraer Executive C, and the two agreed that STEVEN, Embraer Executive C, and the South Africa Company would each take a portion of the $1.65 million to be paid by Embraer RL.

21. At the direction of COLIN STEVEN, the defendant, and unbeknownst to Embraer, the South Africa Company transferred to STEVEN's United States bank account $129,935 of the $1.65 million it had received from Embraer RL: $97,465 on or about October 21, 2011, and $32,470 on or about December 1, 2011. . Those wire transfers passed through a bank in Manhattan, New York.

22. COLIN STEVEN, the defendant, and Embraer Executive C, who had recently been promoted within the company, subsequently had a telephone conversation in which Embraer Executive C informed STEVEN that Embraer Executive C no longer wanted his

8

share of the money. As a result, STEVEN kept all of the
$129,935 he received from the South Africa Company.

23. In or about March 2010 and November 2010, Embraer paid
COLIN STEVEN, the defendant, a total of $44,000 in commissions
based on the sale of the three new aircraft to Saudi Arabia
Company.

24. On or about December 19, 2014, COLIN STEVEN, the
defendant, was interviewed by an agent of the Federal Bureau of
Investigation ("FBI"). During that interview, when asked about
one of the wire transfers he received from the South Africa
Company in 2011, STEVEN falsely stated that the funds had been
transferred to him by an executive of the South Africa Company
for the purpose of buying real estate in connection with a
potential business venture between STEVEN and the executive.

## Statutory Allegations

25. From in or about November 2009, up to and including in
or about April 2011, in the Southern District of New York and
elsewhere, COLIN STEVEN, the defendant, and others known and
unknown, willfully and knowingly did combine, conspire,
confederate, and agree together and with each other to commit an
offense against the United States, to wit, a violation of the
FCPA, Title 15, United States Code, Section 78dd-1.

26. It was a part and object of the conspiracy that COLIN
STEVEN, the defendant, being an employee and agent of an issuer,

9

and aiding and abetting an issuer, together with others known and unknown, would and did willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such foreign official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use that foreign official's influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist Embraer in obtaining and retaining business for and with, and directing business to, Embraer and others.

10

## Overt Acts

27. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. In or about late 2009, COLIN STEVEN, the defendant, met with the Saudi Arabia Official in London, England, and discussed the payment of money to the Saudi Arabia Official in exchange for that official's help in causing the Saudi Arabia Company to award Embraer a contract for the sale of three aircraft and in changing the terms of the deal from used jets to new jets.

b. In or about late 2009, STEVEN met with the Saudi Arabia Official in London and agreed on a per-aircraft bribe amount of $550,000, for a total amount of $1.65 million, in exchange for the Saudi Arabia Official's assistance on the deal.

c. On or about January 5, 2010, STEVEN sent an email to other Embraer employees, including his supervisor, in which STEVEN summarized information and advice that he had received from the Saudi Arabia Official concerning the negotiation of the sale of new aircraft to the Saudi Arabia Company.

d. On or about December 22, 2010, STEVEN, with others, caused Embraer RL to transfer $550,000 from its bank account in Manhattan, New York, to the South Africa Company.

11

e. On or about February 18, 2010, STEVEN, with others, caused Embraer RL to transfer $1.1 million from its bank account in Manhattan, New York, to the South Africa Company.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Violation of the Foreign Corrupt Practices Act)

The United States Attorney further charges:

28. The allegation set forth in paragraphs 1 through 24 are repeated and realleged as if fully set forth herein.

29. On or about February 18, 2011, in the Southern District of New York and elsewhere, COLIN STEVEN, the defendant, being an employee and agent of an issuer, and by aiding and abetting an issuer, willfully used and caused to be used the mails and means and instrumentalities of interstate commerce · corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such foreign

12

official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use that foreign official's influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, to wit, STEVEN caused and aided and abetted the transfer of $1.1 million from Embraer RL's bank account in Manhattan, New York to the South Africa Company's bank account in South Africa, in order to assist Embraer in obtaining and retaining business for and with, and directing business to, Embraer and others.

(Title 15, United States Code, Sections 78dd-1 and 78ff(c)(2)(A); and Title 18, United States Code, Section 2.)

## COUNT THREE
(Wire Fraud Conspiracy)

The United States Attorney further charges:

30. The allegation set forth in paragraphs 1 through 24 are repeated and realleged as if fully set forth herein.

31. From in or about December 2009, up to and including in or around December 2011, in the Southern District of New York and elsewhere, COLIN STEVEN, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, to wit, STEVEN, with others, caused Embraer RL to

13

wire approximately $1.65 million to the South Africa Company, with STEVEN concealing that he would receive approximately $129,935 of that money.

32. It was a part and an object of the conspiracy that COLIN STEVEN, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

**COUNT FOUR**
(Wire Fraud)

The United States Attorney further charges:

33. The allegation set forth in paragraphs 1 through 24 are repeated and realleged as if fully set forth herein.

34. From in or about December 2010, up to and including in or about December 2011, in the Southern District of New York and elsewhere, COLIN STEVEN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to

14

defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, and did aid and abet the same, to wit, STEVEN caused Embraer RL to wire approximately $1.65 million to the South Africa Company, with STEVEN concealing that he would and did receive approximately $129,935 of that money.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE
(Money Laundering Conspiracy)

The United States Attorney further charges:

35. The allegation set forth in paragraphs 1 through 24 are repeated and realleged as if fully set forth herein.

36. From in or about December 2009, up to and including in or about December 2011, in the Southern District of New York and elsewhere, COLIN STEVEN, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

15

37. It was a part and an object of the conspiracy that COLIN STEVEN, the defendant, and others known and unknown, would and did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, the FCPA violations charged in Counts One and Two of this Information and the wire fraud violations charged in Counts Three and Four of this Information.

(Title 18, United States Code, Section 1956(h).)

## COUNT SIX
(Money Laundering)

The United States Attorney further charges:

38. The allegation set forth in paragraphs 1 through 24 are repeated and realleged as if fully set forth herein.

39. From in or about December 2010, up to and including in or about December 2011, in the Southern District of New York and elsewhere, COLIN STEVEN, the defendant, did knowingly transport, transmit, and transfer, and aid, abet, and cause others to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds, from a place in the United States to and through a place outside the

16

United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, the FCPA violations charged in Counts One and Two of this Information and the wire fraud violations charged in Counts Three and Four of this Information.

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

## COUNT SEVEN
(False Statement)

The United States Attorney further charges:

40. The allegations set forth in paragraphs 1 through 24 are repeated and realleged as if fully set forth herein.

41. On or about December 19, 2014, in the Southern District of Florida and elsewhere, COLIN STEVEN, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, to wit, during an interview with the FBI, STEVEN falsely stated that funds he had received from the South Africa Company in 2011 had been transferred to him by an executive of the South Africa Company for the purpose of buying real estate in connection with a potential business venture between himself and the executive when, in truth and in fact,

17

those funds constituted a kickback of a portion of bribery payments from Embraer.

(Title 18, United States Code, Section 1001.)

## **FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FOUR**

42. As a result of committing the offenses alleged in Counts One through Four of this Information, COLIN STEVEN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Four of this Information that the defendant personally obtained.

18

## FORFEITURE ALLEGATION AS TO COUNTS FIVE AND SIX

43. As a result of committing the offenses alleged in Counts Five and Six of this Information, COLIN STEVEN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in the offenses alleged in Counts Five and Six of this Information, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses that the defendant personally obtained.

### Substitute Assets Provision

44. If any of the property described above as being subject to forfeiture, as a result of any act or omission of COLIN STEVEN, the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

19

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p); and Title 28, United States
Code, Section 2461(c), to seek forfeiture of any other property
of said defendant up to the value of the forfeitable property
described above.

> (Title 18, United States Code, Sections 981 and 982;
> Title 21, United States Code, Section 853;
> Title 28, United States Code, Section 2461.)

_____
JOON H. KIM
Acting United States Attorney

_____
SANDRA MOSER
Acting Chief, Fraud Section
Criminal Division
United States Department of
Justice

20

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISRTICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

**- v. -**

**COLIN STEVEN,**

**Defendant.**

---

### INFORMATION

17 Cr. _____  (    )

(18 U.S.C. §§ 371, 1343, 1349, 1956(h),
1956(a)(2)(A), 1001, 2;
15 U.S.C. §§ 78dd-1, 78ff(c)(2)(A).)

<u>                         Joon H. Kim</u>
Acting United States Attorney

<u>                         Sandra Moser</u>
Acting Chief, Fraud Section